691 So.2d 1180 (1997)
Jimmy Lee DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1065.
District Court of Appeal of Florida, Third District.
April 23, 1997.
*1181 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for appellee.
Before JORGENSON, FLETCHER and SORONDO, JJ.
SORONDO, Judge.
The Appellant/Defendant, Davis, was charged with one count of armed robbery, two counts of attempted second degree murder, one count of armed burglary with assault or battery, and one count of attempted armed robbery. The jury found the defendant guilty as charged and the trial court sentenced him to serve 17.27 years in the state prison. We affirm the defendant's convictions but reverse the sentence and remand for re-sentencing.
The sole issue raised by Davis in this appeal, as concerns the trial of this cause, is that the prosecution improperly exercised a peremptory challenge in a racially discriminatory manner against a potential juror. The relevant facts are the following: At the conclusion of voir dire examination, the trial judge began the process of selecting the jury. During that process the state sought to strike Bernadette Pittman, an African-American, by exercising a peremptory challenge. The defendant objected to the use of the challenge, alleging that it was racially motivated. The trial judge ordered the state's attorney to proffer a valid race-neutral reason for striking Ms. Pittman. The prosecutor explained that Ms. Pittman was stricken because she had been arrested for DUI four years previously and that her cousin had been convicted of malicious shooting. The trial judge found the reason to be validly race-neutral and allowed the strike. The defendant objected to the ruling but did not articulate his reasons for objecting.
Davis now argues that the reason given by the prosecutor was pretextual. He bases this argument on the fact that other jurors, who he claims were similarly situated, were treated differently by the state. Specifically, he argues that juror Kathy Carlisle, whose race is not reflected in the record, indicated during voir dire that she had been arrested 23 years previously for disturbing the peace when she was 15 years old. Juror Cynthia Rodriguez, whose race is not reflected in the record, said that her nephew had been arrested for DUI approximately 2 years earlier. Juror Flora Dickson, whose race is not reflected in the record, said that her son had been arrested on drug charges 15 years earlier. Because the reason given by the prosecutor for the excusal of Ms. Pittman also applies to these three jurors who were accepted by the state, the defense suggests that the reason proffered for the excusal of Ms. Pittman, although facially race-neutral, was, in fact, pretextual. Davis goes on to argue that because the trial judge did not specifically make a finding that the prosecutor's proffered reason was "genuine," as he suggests is mandatory under the Supreme Court's decision in Melbourne v. State, 679 So.2d 759 (Fla.1996), his conviction must be reversed.
We begin our analysis by observing that this argument was not made to the trial judge and was consequently waived for purposes of appellate review. Austin v. State, 679 So.2d 1197 (Fla. 3d DCA 1996), rev. denied, 689 So.2d 1068 (Fla.1997); Wilkins v. State, 659 So.2d 1273 (Fla. 4th DCA 1995). Had the defendant made this argument below, the trial judge would have been able to pursue the inquiry and demand a response from the state to the suggestion of pretext. Because no specific ground for the objection was raised, no clarification was possible.
Even if the issue had been properly preserved for appellate review the defendant would not be entitled to the relief he seeks. It is true that disparate treatment of similarly *1182 situated jurors can give rise to a finding of pretext. State v. Neil, 457 So.2d 481 (Fla. 1984); State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). The record, however, must show that the disparate treatment of the jurors in question is based on racial grounds. For example, where the state accepts three white jurors who have been previously arrested, and then strikes an African-American juror who shares this same characteristic, it would be difficult to accept as a valid race-neutral reason that the juror in question is being stricken because he or she has been previously arrested. Such a situation could reasonably give rise to a finding of pretext in the absence of an explanation as to why white jurors with exactly the same experience would be acceptable. This is the situation the defendant suggests existed in this case. Unfortunately, the record does not identify the race of jurors Carlisle, Rodriguez or Dickson.[1] It is therefore impossible for us to determine the question of pretext. If these three jurors are African-Americans, as is Ms. Pittman, then there would be no reason to believe that Pittman was excused for racial reasons.[2] There is nothing in Neil, or its progeny, that forbids choosing among available jurors, even for capricious reasons, so long as the reasons are not racially discriminatory. Peremptory challenges are still presumed to be exercised in a non-discriminatory manner. Melbourne v. State, 679 So.2d at 764.
The defendant's second argument on this issue is that he is entitled to a reversal of his conviction because the trial judge failed to make a specific finding that the prosecutor's race-neutral reason was "genuine." In Melbourne, the Supreme Court restructured the Neil test as follows:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful discrimination.
679 So.2d at 764.
In this case, the defendant made a timely objection, identified the juror, Ms. Pittman, as an African-American and asked the court to conduct an inquiry. Step 1 was therefore satisfied. The trial court complied and asked the state to proffer a valid race-neutral reason. The state responded with such a reason, specifically, that Ms. Pittman had been previously arrested and that a close relative had also been arrested. Allen v. State, 643 So.2d 87 (Fla. 3d DCA 1994); Aikens v. State, 609 So.2d 764 (Fla. 3d DCA 1992); Miller v. State, 605 So.2d 492 (Fla. 3d DCA 1992); Files v. State, 586 So.2d 352 (Fla. 1st DCA 1991). Step 2 was also satisfied. The defendant argues that because the court did *1183 not then articulate specific findings of genuineness, Melbourne mandates reversal.
It is important to understand that step 3 requires the trial court to determine the racial neutrality of the proffered reason, and to satisfy itself that the explanation is not a pretext. Thus, pretext is what the court is looking for in the third step of the analysis. The genuineness of the explanation is the yardstick with which the trial court will determine whether or not the proffered reason is pretextual. The Supreme Court explained step 3 as follows:
If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.
679 So.2d at 764.
In this case the trial judge was obviously satisfied with the state's race-neutral reason. The fact that the court allowed the peremptory challenge clearly indicates that she did not find the state's reason to be pretextual. We do not believe that Melbourne requires a trial judge to conclude every Neil/Melbourne inquiry with the words, "I find the proffered reason to be genuine and, consequently, not pretextual," where, as in this case, there is absolutely nothing in the record to suggest that it is and in the absence of an objection to the genuineness of the proffered reason. Clearly, where the objecting party challenges the explanation as being pretextual, the trial court would be wise to articulate its finding of genuineness, or lack of genuineness, in order to facilitate appellate review. As the Supreme Court said in Melbourne:
The right to an impartial jury guaranteed by article I, section 16, is best safeguarded not by an arcane maze of reversible error traps, but by reason and common sense.
679 So.2d at 765.
As concerns the defendant's sentence, the state properly concedes that the trial court erred by assessing 18 points for possession of a firearm when the conviction is for an offense enumerated in § 775.087(2), by imposing consecutive minimum mandatory terms for use of a firearm where all of the crimes occurred during a single criminal episode, and by sentencing the defendant to a term of incarceration in excess of 15 years for the charge of attempted robbery with a firearm, a second degree felony. Palmer v. State, 438 So.2d 1 (Fla.1983); Dacosta v. State, 672 So.2d 861 (Fla. 3d DCA 1996); Allen v. State, 574 So.2d 1219 (Fla. 3d DCA 1991).
We affirm the convictions herein, reverse the defendant's sentence and remand for re-sentencing.
NOTES
[1] Although surnames can sometimes indicate a heritage that qualifies as a distinct racial or ethnic group, they are not determinative of the juror's race or ethnicity. This is particularly true where the jurors at issue are women, who often chose to adopt their husbands' surnames. Because all peremptory challenges carry a presumption of non-discriminatory use, it is the responsibility of the party objecting to the exercise of the peremptory strike to establish the race, ethnicity or gender of the juror in question.
[2] It is conceivable that discrimination could occur among members of the same race if the discrimination was based on gender or some other recognized basis. In this case, however, not only are all of the jurors in question potentially African-Americans, they are all women. Our analysis here is limited to a review of racial discrimination because the issue of gender discrimination was not raised below.