787 So.2d 185 (2001)
Cecil W. BOWDEN, I, Appellant,
v.
STATE of Florida, Appellee.
No. 1D99-244.
District Court of Appeal of Florida, First District.
May 15, 2001.
*187 Nancy A. Daniels, Public Defender; Kathleen Stover, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; James W. Rogers, Assistant Attorney General, and Karla D. Ellis, Assistant Attorney General, Tallahassee, for Appellee.
POLSTON, J.
The defendant Cecil W. Bowden was charged with burglary of an unoccupied structure, resisting an officer with violence (two charges for resisting two officers), and criminal mischief. The jury found the defendant guilty as charged. The defendant appeals his convictions, and argues that (i) one of the two convictions for resisting the two officers with violence should be reversed because it violates double jeopardy, and (ii) the State improperly exercised a peremptory strike to exclude the sole African-American venireperson. We affirm the trial court's ruling on the State's peremptory strike, but reverse and remand for the trial court to vacate one of the two convictions for resisting the two officers with violence.
Regarding the defendant's argument that his two convictions for resisting the two officers with violence violates double jeopardy, we agree with the defendant that the facts in this case are not distinguishable from Wallace v. State, 724 So.2d 1176 (Fla.1998) and Fogle v. State, 754 So.2d 878 (Fla. 1st DCA 2000). Because the defendant's two convictions arose from a single episode, we reverse and remand for the trial court to vacate one of the convictions for resisting arrest with violence.
During the jury selection, the questions asked of venirepersons during voir dire were recorded by a court reporter, but the actual selection of the jury that occurred at the bench was not recorded. Counsel for the parties have entered into stipulations for our record review, including those at a hearing conducted by the trial court to reconstruct the record.
During one of the bench conferences to select the jury, the State moved to strike the only African-American juror in the venire panel. The defendant objected to the challenge, arguing that it was racially motivated. The State asserted that the case involved an alleged burglary of a pharmacy and the possibility of a drug-based voluntary intoxication defense. The State's counsel explained to the trial court his concern that the history of drug charges against the juror's relatives and her body language in responding to his questioning might render her more sympathetic to the defendant. The defendant argued that these reasons were pretextual, stating that the juror professed little knowledge of the criminal history of her relatives and the juror had stated that those charges would not affect her ability to remain impartial in the case. The defendant also argues on appeal that similar answers to the State's questioning were given by a white juror, who was not excluded. The trial court judge indicated that he did not believe the strike was racially motivated and denied the defendant's objection. The State exercised its peremptory strike to exclude the venireperson.
The Florida Supreme Court, in Melbourne v. State, 679 So.2d 759 (Fla.1996), established a three-step process for racebased objections to peremptory challenges:
A party objecting to the other side's use of a peremptory challenge on racial *188 grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike. At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
679 So.2d at 764 (emphasis added, footnotes omitted).
Under Melbourne, there is no dispute in this case that a timely objection was made by the defendant and that a facially race-neutral explanation was given by the State. Step 3 of Melbourne is at issue.
The defendant argues for a new trial on the alternative grounds that either the trial court did not reach Melbourne's step 3, the trial court applied Melbourne incorrectly, or the record is inadequate to make this determination.
The stipulated record states that "[t]he trial court judge indicated he did not believe the strike was racially motivated and denied Defense Counsel's objection and allowed the State to exercise it's peremptory challenge and exclude Juror No. 228." (Emphasis added). This statement indicates that the trial court reached step 3 of the Melbourne analysis and determined that the strike was genuine.
Even had there not been a stipulated record indicating the trial court's specific ruling on genuineness, the judge's decision to allow the State's peremptory challenge would indicate that he found the strike to be genuine. There are no specific words that the trial court must state to satisfy the step 3 considerations of Melbourne. Washington v. State, 773 So.2d 1202, 1204 n. 2 (Fla. 3d DCA 2000); Davis v. State, 691 So.2d 1180, 1183 (Fla. 3d DCA 1997)("We do not believe that Melbourne requires a trial judge to conclude every [State v.] Neil [457 So.2d 481 (Fla.1984)]/Melbourne inquiry with the words, `I find the proffered reason to be genuine and, consequently, not pretextual,' where, as in this case, there is absolutely nothing in the record to suggest that it is and in the absence of an objection to the genuineness of the proffered reason.").
We turn to defendant's next argument, that the trial court applied Melbourne incorrectly. The Florida Supreme Court, in Melbourne, has given very wide discretion to the trial courts in ruling on these challenges:
Voir dire proceedings are extraordinarily rich in diversity and no rigid set of rules will work in every case. Accordingly, reviewing courts should keep in mind two principles when enforcing the above guidelines. First, peremptories are presumed to be exercised in a nondiscriminatory manner. Second, the trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous. The right to an impartial jury guaranteed by article I, section 16, is best safeguarded not by an arcane maze of reversible error traps, but by reason and common sense.
679 So.2d at 764-65 (emphasis added). The Court receded from State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 *189 (1988), and its progeny to the extent that they required a "reasonable" rather than a "genuine" nonracial basis for a peremptory strike. 679 So.2d at 765. See Symonette v. State, 778 So.2d 500, (Fla. 3d DCA 2001)(under Melbourne, the Florida Supreme Court has redefined the appellate court's role and "determined that the primary responsibility for deterring discrimination in the jury selection process would rest with Florida's trial judges"); Rodriguez v. State, 753 So.2d 29, 41 (Fla. 2000)(Court would not, "on a cold record, second-guess" how the venireperson responded to questions; "[t]his is exactly the type of credibility assessment that must be made by the trial court and, on this record, we cannot say that the trial court's decision was clearly erroneous"); Young v. State, 744 So.2d 1077, 1082 (Fla. 4th DCA 1999)(providing history of evolution in the law on peremptory challenges; trial courts have broad discretion in ruling on peremptory challenges); King v. Byrd, 716 So.2d 831, 834 (Fla. 4th DCA 1998)("As appellate judges, we are not at the trial. We did not see the expressions, hear the tones of voices, or observe the general dynamics of the courtroom. That is why Melbourne left decisions with respect to peremptory challenges to the trial court.").
The defendant argues that the venireperson indicated that she was willing to serve and could be fair. However, as stated in Symonette, "[t]he fact that such a juror asserts that he or she can, nevertheless, be fair and impartial, does not mean that the state must be satisfied with the response." Id. at 503.
Under Melbourne, the trial court's ruling (that he did not believe that the strike was racially motivated) turns primarily on an assessment of credibility. We must affirm unless the ruling is clearly erroneous.
The defendant challenges the reasonableness of the State's explanation for the strike. However, as explained in Melbourne, that is no longer the test. The reasonableness of an explanation is a factor that a court may consider in assessing genuineness. 679 So.2d at 764 n. 9. A court, when considering the relevant circumstances surrounding the strike, may consider the various Slappy factors, including whether a strike is based on a reason equally applicable to an unchallenged juror. Id. at 764 n. 8. The defendant does not contend that the trial court failed to consider the relevant circumstances surrounding the strike. Rather, the defendant disagrees with the trial court's assessment that the strike was genuine. We conclude that the trial court's ruling, under Melbourne, is not clearly erroneous.
The defendant's last alternative argument is that the record is inadequate to make a determination under Melbourne. Prior to Melbourne, a peremptory challenge based on body language was not an acceptable reason unless observed by the trial judge and confirmed by the judge on the record. Wright v. State, 586 So.2d 1024, 1029 (Fla.1991). However, the Florida Supreme Court in Melbourne has advised us on review to use common sense and to not create traps of reversible error.
Common sense indicates that the trial judge is in the best posture to determine whether a party is genuinely striking a potential juror for using body language, regardless of whether a notation is placed on the record by the judge or not. For example, if in response to a question a potential juror makes an obscene hand gesture back at the questioning attorney, the judge is in an excellent posture to see the gesture and make the determination that the party's strike is genuine. It does not make sense in that instance for us to *190 find error and reverse the case just because when challenged, the questioner responded that he did not like the juror's body language, and the judge permitted the strike without noting the body language on the record.
Likewise in this case, the State's attorney explained that the body language of the juror concerned him. It is not necessary that the judge made a record of what the body language was. See e.g., Smith v. State, 699 So.2d 629, 635-36 (Fla. 1997)("The trial court is able to see the jurors' voir dire responses and make observations which simply cannot be discerned from an appellate record."); English v. State, 740 So.2d 589 (Fla. 3d DCA 1999)(citing Melbourne, reversed conviction and granted new trial on trial court's erroneous denial of peremptory strike of person who, defense counsel claimed, rolled his eyes and did not seem to understand or like the questions and concepts raised; the trial court denied the strike because he did not personally observe the behavior); United States v. Cordoba-Mosquera, 212 F.3d 1194, 1198 (11th Cir.2000)(deference to the trial judge is particularly warranted for body language, a behavior that is especially given to on-the-spot interpretation), cert. denied, ___ U.S. ___, 121 S.Ct. 893, 148 L.Ed.2d 800 (2001); United States v. James, 113 F.3d 721, 729 (7th Cir.1997)(trial court was in a better position than we are to judge the juror's body language).
The opponent of the strike must prove purposeful racial discrimination. Melbourne, 679 So.2d at 764. Accordingly, the burden of proving error from the record is on the opponent of the strike. For example, in Morris v. State, 680 So.2d 1096 (Fla. 3d DCA 1996), the court reversed the defendant's conviction and remanded for a new trial because, under Melbourne, the trial court erred in denying the defendant's peremptory challenge. The court stated that "[t]here was nothing in the record that would suggest that the reasons offered for the peremptory challenge were pretextual in nature." 680 So.2d at 1098.
Similarly, in Davis v. State, 691 So.2d 1180 (Fla. 3d DCA 1997), the court affirmed the conviction of the defendant, ruling that it was not reversible error for the trial court to allow the State's strike of a potential juror. The record was incomplete because it did not identify the race of comparable venirepersons. Id. at 1182. The court stated that without the record, it was therefore "impossible for us to determine the question of pretext." Id. Absent proof to the contrary, the court held that there was no pretext because under Melbourne, peremptory challenges are still presumed to be exercised in a non-discriminatory manner. Id. See also Rodriguez v. State, 753 So.2d 29, 40 (Fla.)(citing Davis, Court could not conclude that trial court was clearly erroneous because of a lack of proper identification in the record), cert. denied, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000); Hernandez v. State, 686 So.2d 735 (Fla. 2d DCA 1997)(reversing because strike should have been permitted; "There is no indication [in the record] that the trial court regarded Mr. Hernandez's explanation [for strike] as disingenuous").
In Carter v. State, 762 So.2d 1024 (Fla. 3d DCA 2000), the defendant argued that a strike should not have been permitted because the State was wrong in its description of how the potential juror answered questions. The court stated that the defendant was obligated to call the State's error to the attention of the trial court:
[W]hen the state asserts a fact as existing in the record, the trial court cannot be faulted for assuming it is so when defense counsel is silent and the assertion *191 remains unchallenged. Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason. Here, the error was easily correctable. Had defense counsel disputed the state's statement, the court would have been compelled to ascertain from the record if the state's assertion was true. Had the court determined that there was no factual basis for the challenge, the state's explanation no longer could have been considered a race-neutral explanation, and Juror Edmonds could not have been peremptorily excused. Because defense counsel failed to object to the prosecutor's explanation, the issue was not properly preserved for review.
762 So.2d at 1026, quoting Floyd v. State, 569 So.2d 1225 (Fla.1990). The defendant bears the burden of proving pretext.
The case of McKenzie v. State, 754 So.2d 851 (Fla. 2d DCA 2000), is similar because there was not a reviewable record of the jury selection bench conferences. However, in McKenzie, there was a videotape recording procedure used in the trial that failed so as to render the transcript of the trial unreviewable. We agree that if a defendant is in a circumstance where, although he has ensured that the court reporter is present at the bench conference to preserve any error he may want to raise, but the reporter's equipment fails, he is entitled to a new trial as in McKenzie. In this case, unlike McKenzie, there is a sufficient stipulated record for review under Melbourne.
To the extent that McKenzie would require a new trial if the defendant fails to have the reporter recording the bench conference, or if the defendant fails to make the requisite proof on the record, we decline to follow it. For example, the potential jurors in McKenzie were not identified by name or juror number. If the lack of identification was the court reporter's fault in some way, then we agree that the defendant is entitled to a new trial pursuant to Delap v. State, 350 So.2d 462 (Fla. 1977)(court reporter ordered to produce transcripts under threat of contempt; new trial ordered because lack of record)(cited in McKenzie). However, if the lack of identification is because the defendant failed to make it on the record in a proper way to preserve the error, we decline to follow McKenzie to the extent that it would require a new trial.
In sum, the trial court's ruling on the peremptory challenge is not clearly erroneous.
AFFIRMED in part and REVERSED and REMANDED in part.
PADOVANO, J., concurs.
BENTON, J., concurs with opinion.
BENTON, J., concurring.
Since State v. Slappy, 522 So.2d 18, 23 (Fla.1988), a party lodging a peremptory challenge to a prospective juror has had not only to articulate a non-discriminatory basis for the challenge but also to identify "record support for the reasons given," if the challenge is objected to as discriminatory. It has been routinely held that
the inquiry does not end when the state articulates a facially acceptable reason; the trial court must also find record support for the reason to ensure the state has not given a pretextual explanation for an inappropriate challenge. Slappy, 522 So.2d at 23-24; Hicks v. State, 591 So.2d 662 (Fla. 4th DCA 1991); Gadson v. State, 561 So.2d 1316 (Fla. 4th DCA 1990).
House v. State, 614 So.2d 647, 648 (Fla. 2d DCA 1993). While our supreme court receded from Slappy in Melbourne v. State, *192 679 So.2d 759, 764 (Fla.1996), to the extent it held that the requisite facially raceneutral explanation need not be reasonable, so long as it is genuine, the court has never held sufficient an explanation lacking record support altogether, where the trial court was apprised that no record basis existed.
Several post-Melbourne decisions proceed on the assumption that the recordsupport requirement survives. See Baber v. State, 776 So.2d 309, 310 (Fla. 4th DCA 2000) ("Nothing in the record supports any race neutral reason for the challenge."); Henry v. State, 724 So.2d 657, 658 (Fla. 2d DCA 1999) ("There is nothing in this record which supports a race-neutral reason for striking Jones ....") (per Justice Quince sitting as an associate judge and writing for a unanimous panel); Daniel v. State, 697 So.2d 959, 961 (Fla. 2d DCA 1997) ("There is no evidence of Guillermo's bias for defense counsel in the record. Therefore, the trial court's acceptance of the prosecutor's stated reason for the strike as race neutral is erroneous."). See also Carter v. State, 762 So.2d 1024, 1026-27 (Fla. 3d DCA 2000).
As the supreme court itself said, only to "the extent that Slappy and its progeny require a `reasonable' rather than a `genuine' nonracial basis for a peremptory strike, [did the Melbourne court] recede from those cases." 679 So.2d at 765. Just as the requirement that the challenger's proffered reason have record support has survived Melbourne, however, so has the requirement laid down in Floyd v. State, 569 So.2d 1225, 1229 (Fla.1990), that: "Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason." See Carter, 762 So.2d at 1026-27; Nelson v. State, 688 So.2d 971, 975 (Fla. 4th DCA 1997). The Floyd court held that determining "factual existence" requires "ascertain[ing] from the record if the state's assertion was true." 569 So.2d at 1229.
Here, as Judge Polston explains, the record consists in part of a transcript of voir dire and in part of the parties' stipulations as to what transpired in bench conferences. The transcript of voir dire does not support either reason the state assigned for exercising a peremptory challenge to the venire's only African-American member. But the parties seem to have stipulated that defense counsel affirmatively misled the court in this regard as to one of the state's putative reasons. Among the facts to which the parties stipulated for purposes of appeal was this:
Defense Counsel argued that the Assistant State Attorney's reasons were pre-textual and that Juror No. 228 Ms. Delegol-Robinson (the venireperson in question) professed little knowledge of the criminal history of her relatives and she had stated that those charges would not [a]ffect her ability to remain impartial in this matter.
(Emphasis supplied.) Even though Ms. Delegol-Robinson never said that any relative had ever been charged with any crime, defense counsel (like the state's attorney) told the trial court that she had. Thus misinformed, the trial court reached the third Melbourne step and ruled that this proffered, non-racially-discriminatory reason for the peremptory challenge was genuine. Under Floyd, the defense cannot complain on appeal about the trial court's reaching the third Melbourne step on the basis of this proffered justification, even though the trial court was misled, because defense counsel did not assert below that this explanation was not supported by the record.
For the same reason, appellate counsel is foreclosed from arguing that the trial court's decision as to genuineness must be *193 reversed because no record basis for this proffered reason existed. Appellant's other arguments for reversing the trial court's determination that this proffered reason was bona fide are unavailing. The argument that the state's failure to challenge a similarly situated, non-African-American venireperson evinces bias is undercut by the fact that the state did challenge two other such venirepersons. "[T]he trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous." Melbourne, 679 So.2d at 764-65.
The trial judge did not, it is also true, confirm on the record the occurrence of any body language about which the state's attorney complained, in assigning a second reason for the peremptory strike. See Wright v. State, 586 So.2d 1024, 1029 (Fla. 1991). The record does not reveal, moreover, whether or not defense counsel disputed its occurrence. See Floyd, 569 So.2d at 1229; Slappy, 522 So.2d at 23. But, because the trial court found that the first reason the assistant state's attorney asserted was not a pretext, but a genuine, non-discriminatory explanation for the peremptory strike, the sufficiency and genuineness of the body language explanation have become immaterial.